The standards for granting a due process motion to dismiss based on the misconduct of the government agent are certainly hard to meet. The doctrine is reserved for the most appalling and egregious cases. The trial judge below denied Mr. Therrien's motion without a hearing, finding that although theoretically viable, the doctrine has never been successfully invoked in the First Circuit. Well, pretty much anywhere else. Just about anywhere else. But if it's going to be in this circuit, this is the case for it. Well, why is this case so unique? What makes this case different? There isn't a whole lot here, given the time differential between their last conduct and when he started to sell drugs and guns. I think what makes it different is that Officer Anthis began working both of these men, Perez, who became an informant, and Therrien, who did not, while they were in prison, doing favors for Mr. Therrien, flirting with Mr. Therrien. And then after their release in the spring of 2013, the phone record showed the activity between them. She ended up being present to sign Mr. Perez as an informant, and she had many phone calls back and forth. Yes, but she didn't do anything at any of the times when he actually sold the guns, the drugs. She wasn't any part of that. She had no conduct in connection with that. And there's a time differential. How does this become the level of outrageous? Judge Stahl, she requested a favor for a favor, and in requesting Therrien to sell drugs to her informant, she did it in order to, as she told him, get a promotion. She was originally signed as a case-specific agent. After that first sale, she was sworn in full-time. Before that first sale, during all these phone calls and text messages that were recovered from Mr. Therrien's phone, it showed the nature of their relationship, including she was present with the FBI and Perez the day before the sale when the phone call was made to Therrien. She was present the day of the sale, before and after the sale, and she was present for the payment. But she wasn't a member of the FBI. It was an FBI activity, not one of the department that she worked for, and there's still very little connection between the events at the prison and her ability to try to get herself a couple of informants. We all know that they do many things to try to get informants. The events that are most appalling are the ones after they were released from the prison, with the relationship she had with Mr. Therrien, including oral sex. That relationship led to him agreeing to the sale. But what's the, if it's a federal prosecution, what was the role of federal agents or prosecutors in making that happen? They granted the officer at his head, as the FBI agent testified, a supporting role in all of the sales. She was the handler of Mr. Perez. She was the one who controlled him. So what I'm trying to figure out is, suppose she wasn't a law enforcement officer, she was just an informant. Is the case the same or different? I think it's a bit different. A bit different? I mean, how much different? Well, I think it's different to the extent that when you're talking about a law enforcement officer, as opposed to an informant, having sex with a target, it's a great deal different. But I guess what I'm trying to figure out is, why is it a great deal different from the perspective of the federal agents and the federal prosecutor who brought the case? No, they didn't put her up to it. There's no evidence of that. So I don't really see what the significance is, considering how outrageous the federal prosecution is, that the person who got the defendant to act happened to be a local law enforcement officer. I don't think that we can ignore that it was a local law enforcement officer working with the federal task force that was involved in the conduct, heavily involved, in working her agent for these sales. I think that's important. Well, I guess what I'm trying to figure out is, how much did the federal agents or prosecutors know about what she was doing? Well, I don't think they knew much at all about what she was doing. Right, so then why does it matter that she's a law enforcement officer? It seems like the rule you'd be adopting would be a rule that would apply to any informant that federal prosecutors or agents use, if the informant used these mechanisms to get the defendant to act. And that seems like a pretty broad rule. I don't think so, Your Honor. I don't think so because I believe a law enforcement officer has to be held to a bit of a higher standard. That's what I'm trying to figure out. You're saying that the federal prosecution is outrageous. But from the perspective of the people engaged in the federal prosecution, they didn't know what this person was doing. So it doesn't matter what status that person has, your rule would be equally applicable to any person of any status who engaged in this conduct with the defendant. That seems to me an awfully broad rule. I don't think so. At the time, they didn't know. But they were responsible for her conduct in the sense that they had her working for them, working with her informant for them. They didn't know exactly what was going on. I'm sorry, what is the evidence of that? Oh, it was... That she was working directly for the FBI when she engaged in this relationship? That she was present in June for two payments from the FBI to the U.S.? That's not your question. Presence wasn't my question. Okay, I'm sorry. You made an assertion that the FBI was responsible because it controlled her behavior. What's the basis in the record for that? I'm sorry, I did not mean that they controlled her behavior in getting her to act this way. Why are they responsible then for her behavior? They didn't know about it at the time? I think they're... She's not acting at their direction? For the same reason that they would be responsible if it was an FBI agent that was involved in the investigation. It's not now, is it? Well... There's a difference between state law enforcement and federal law enforcement. Well, there may be a difference, but she was acting as a federal agent at the time that this occurred. But that would be true of an informant also? It would be. Yeah, so I think that's the difficulty we have. The rule you're adopting seems hard to cabin to this particular circumstance because the fact of her being a local law enforcement officer doesn't seem particularly relevant in trying to figure out how bad the actions of the federal prosecutor and agent were. In the case of a federal FBI agent engaging in this, it wouldn't be that hard to say the federal government was acting outrageously because one of their employees was acting this way. Now, even that case might be too hard, but at least it would be easy to see how you could draw the line. I understand that, but I do think that there has to be some responsibility when this sort of thing occurs. I'm not suggesting a rule that would be applied equally. In fact, I think it has to be a case-by-case basis for the totality of the circumstances involved. Why should a federal judge take this away from a jury and rule as a matter of law that this was so outrageous? You were able to present to a jury your entrapment defense, and you put her on the witness stand, and the jury evaluated her testimony against your accusations, and they rejected the entrapment defense. Isn't that all you were entitled to? The defense was entrapment by estoppel rather than entrapment, Your Honor. It was simply a due process defense. The jury was there to determine guilt or innocence, which Mr. Therrien never denied his guilt, ever. He assisted the federal government in investigating this act. He entered into a plea bargain, but it was later rejected. I don't understand. I thought you actually argued entrapment to the jury. No, entrapment was removed from the jury. It was entrapment by estoppel, a due process argument that he should not have made. I'm sorry, which was not submitted to the jury, only submitted to the judge? No, that was submitted to the jury under the authority of the Smith case in this circuit. What's the significance in your mind that it was entrapment by estoppel defense rather than entrapment defense? Well, I think it's a little difficult for a jury who believes they're there to find guilt or innocence to weigh the conduct they heard something about, including some evidence, that they were never able to get because of the destruction of evidence by the agent involved when she threw away her phone. You don't challenge the fact that you only could bring entrapment by estoppel defense as opposed to a regular entrapment defense? Before us, as the record comes to us, you got to put forward whatever entrapment defense you were entitled to put forward, correct? I don't think so. I'm putting forward... No, no, as the case comes to us on appeal, there's nothing here that suggests you were denied putting forward any kind of entrapment defense that you were entitled to put forward. No, not at all. No, not at all. I see my time is up. Counsel. May it please the court, Julie Caraba on behalf of the United States. Mr. Therian does not deny that he committed the criminal acts charged in the indictment here. He dealt drugs, he sold a firearm, and he had the requisite criminal intent. He had no entrapment defense, so he submitted an entrapment by estoppel defense to the jury in which he claimed that he was promised immunity for these criminal acts. But the jury rejected that defense. Now he's asking for the extraordinary step of setting him free from those criminal acts because of judicial disapproval of an investigatory tactic employed by a single agent on her own that allegedly involved an intimate relationship. I'm sorry, are you, as the federal prosecutor, taking responsibility for her actions? Well, as we argued in the brief, none of her supervisors knew about her conduct, and as the question Yes or no? No. All right. She was acting on her own, and none of her supervisors knew about her relationship. What difference does it make if none of her supervisors know or knew if she, in fact, by her actions, the result that she wanted, which is for him to do this in order to advance her career. That's his argument. So why does supervisory liability make any difference? Well, I think the way that it's relevant is that the Second and Third Circuits that have adopted this multi-factor test for claims of this kind have asked whether the government employed sex as an investigatory tool and used it deliberately in a way that isn't present here. In both of those cases, the courts asked whether the government agents were acting on their own or pursuant to a directive. So if this court were to adopt a similar test, then that's where it might become relevant. I thought the government's argument was even if her supervisors had known about this sex, she denies it happened. He said it happened. He said that sex in and of itself is not enough. Prosecutors are allowed to do all sorts of things that other lawyers are not allowed to do. And the use of an agent who has a sexual relationship is not in and of itself enough anyway. That's correct, Judge Lynch. As the Ninth Circuit pointed out in United States v. Simpson, government agents use all sorts of tactics to ingratiate themselves with the targets of investigations and need to have the flexibility to do so. Are you asking us to adopt some sort of per se rule that use of sex is in itself not enough? Well, yes, that's what we argued in our brief. But even if the court were not inclined to go so far, I do think it's generally a case-by-case analysis. And certainly in this case, there's not enough to clear the very, very high bar. And if we did adopt that per se rule, we'd be running into a conflict with the Second and Third Circuit's test, wouldn't we? Well, I don't think necessarily. How could it be? One of the prongs of the test that you just articulated for the Second and Third Circuit would be irrelevant. Because it wouldn't matter if you intentionally deployed your agent to get the defendant to act a certain way through sexual relationship. Because you say per se, that's a fine thing to do for the government. Well, in neither of those circuits has this defense ever been successful where there was a sexual relationship. You'd be in conflict with the test. The test they would have enunciated would be a nonsensical test, if you're right. Well, I agree that there would be some tension, but it would accord then with the Ninth Circuit's United States v. Simpson opinion. So to the extent you're worried about that tension, I think it already exists between the Ninth Circuit and the Second and Third Circuits. If we just rule that under the Second and Third Circuit test there's no problem here, we don't create any tension with the Ninth Circuit. If we adopt the Ninth Circuit's rule, we do create tension with the Second and Third Circuit. That's correct. I'd be happy to answer any questions about either of the other two issues that the defendant has put forward, and if not, we're happy to respond. The juror turning on the defendant's cell phone in the jury room and seeing some reference to molly not being a drug on which he is indicted or which he admitted selling, what's the government's response to his arguments about that? Well, I would begin by reminding the court that the question there is whether the district court committed a manifest abuse of discretion in its handling of that potential juror taint, and the district court acted promptly to understand the extent of that potential exposure and warned the entire jury several times not to turn on the phone or explore its contents. Only one juror definitively saw the word molly. It appears that the foreperson was the one who also saw the phone but didn't make any indication that he saw that word. Did the judge instruct the juror to disregard what the juror saw? Yes. The one juror who said that she saw the word molly, the judge specifically said to disregard that reference. And was there any evidence before the judge that that juror had communicated what she saw to anyone else? There was no indication. She indicated that as soon as she saw something on the phone, she closed it and turned it off. And she didn't represent she had spoken to anyone else about what she had seen. That's correct. And was there any request from the defendant for an instruction beyond the instruction that the district court gave? The defendant did not request a curative instruction. Did the district court give the instruction just to that particular juror or to the jury? The exact language was slightly different. He particularly told that juror to disregard the reference to molly. He didn't tell the rest of the jury that that word was seen, but he told the rest of the jury not to turn on the phone or to look at what was inside. But as far as the record came to, the judge had nothing before him to indicate that anyone else on the jury had seen anything. Is that right? The juror number six, who was the one who saw the word molly, said that one other juror was looking over her shoulder at the time that she turned the phone on. It appears that that person was the foreperson who was also questioned by the judge and who thought that the text message they saw was one that was already in evidence. And was that juror instructed not to consider what he had seen? Or would it be too awkward as the idea because then you'd be saying don't look at something that already is in evidence also? Right. So the judge included that foreperson in the general warning not to look at the phone. As I understand the argument on appeal, it is that the judge was required to question every juror individually, not just those two. That's the appellant's argument. But again, it's a manifest abuse of discretion standard, and the judge took steps to understand the extent of the exposure, cured the one juror who definitively saw the prejudicial word, and repeatedly warned the entire jury to not further engage with the phone, and I think that was within his discretion. Anything else you'd like to say to us? If there are no further questions, we urge this Court to affirm. Thank you. Thank you both.